UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KATHLEEN HOGAN, as Administrator of the Estate of Jonathan H. Legg, deceased<br>c/o R. Craig McLaughlin<br>Elk & Elk Co., Ltd.<br>6105 Parkland Blvd. Suite 200<br>Mayfield Heights, OH  44124<br><br>      Plaintiff,<br><br>CITY OF PARMA, OHIO<br>c/o Timothy G. Dobeck, Law Director<br>6611 Ridge Road<br>Parma, OH  44129<br><br>and<br><br>PETER SHEPETIAK<br>c/o Parma Police Department<br>5555 Powers Blvd.<br>Parma, OH  44129<br>*in his individual and official capacity*,<br><br>and<br><br>CITY OF PARMA HEIGHTS, OHIO<br>c/o Michael D. Pokorny, Law Director<br>6281 Pearl Road<br>Parma Heights, OH  44130<br><br>and<br><br>LUKE BERRY<br>c/o Parma Heights Police Department<br>6184 Pearl Road<br>Parma Heights, OH  44130<br>*in his individual and official capacity*<br><br>      Defendants. | Case No.<br><br>Judge<br><br>**COMPLAINT AND JURY DEMAND** |

1

## I. PRELIMINARY STATEMENTS

1. This civil rights case challenges as excessive force the deadly shooting of Jonathan H. Legg by Parma police officer Peter Shepetiak and Parma Heights police officer Luke Berry during a traffic stop for a minor non-moving violation that took place on June 20, 2018.

2. Jonathan H. Legg was a 29-year-old man who had "Asperger's Syndrome" which according to the Autism Society of America, is a high-functioning form of autism. Since 2013, Jonathan's disorder was included in the diagnosis of Autism Spectrum Disorder (ASD) in the Diagnostic and Statistical Manual of Mental Disorders 5 (DSM-5).

3. Jonathan H. Legg experienced difficulty with social interactions; difficulty with the give and take of conversations; difficulty with nonverbal conversation skills; and had hypersensitivities that were consistent with and normal for someone who had Autism Spectrum Disorder.

4. Despite his autism, Jonathan completed high school; obtained a job where he was described by his boss as a hard worker and a good employee; and was on his way home after work to his apartment where he lived independently when this tragedy occurred.

5. Police officers Peter Shepetiak and Luke Berry incorrectly perceived Jonathan's autistic difficulties, behavior, and mannerisms as suspicious behavior and consequently escalated this routine traffic stop to a situation where the officers panicked, overreacted, used excessive force, violated Jonathan's rights, and shot and killed him. Plaintiff brings this case in order to secure fair compensation and to ensure that in the future, other citizens who have autism or other mental disorders are properly approached by well-trained policed officers and not killed with excessive force.

## II. JURISDICTION AND VENUE

6. Jurisdiction over claims arising from Defendants' violation of the Civil Rights Act is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (3) and (4).

7. Jurisdiction over the state law claims is conferred upon this Court by 28 U.S.C. § 1367.

8. Venue is proper in this Division because this incident took place in Cuyahoga County and the Defendants are located there as well.

## III. THE PARTIES

9. Plaintiff Kathleen Hogan is the mother of Jonathan Legg and the duly appointed Administrator of the Estate of Jonathan Legg and is bringing this action for the benefit of Jonathan's next of kin, including herself, his father, sister, and other family members and next of kin.

10. Defendant Peter Shepetiak was at all times relevant to this action employed by the City of Parma as a police officer. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in both his individual and official capacities.

11. Defendant Luke Berry was at all times relevant to this action employed by the City of Parma Heights as a police officer. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in both his individual and official capacities.

12. Defendant City of Parma, Ohio ("City of Parma") is a unit of local government organized under the laws of the State of Ohio. Defendant City of Parma is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

13. Defendant City of Parma Heights, Ohio ("City of Parma Heights") is a unit of local government organized under the laws of the State of Ohio. Defendant City of Parma Heights is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

## IV.  FACTS

**A.  Defendants were not properly trained and equipped to interact with a citizen of the community who had Autism.**

14. According to the Autism Society of America, more than 3.5 million Americans live with an autism spectrum disorder.

15. Research concludes that "the developmentally disabled are approximately seven times more likely to come in contact with law enforcement than others."

16. In April 2001, the United States Department of Justice, Federal Bureau of Investigation, published the *FBI Law Enforcement Bulletin* that contained an article titled "Contact with Individuals with Autism."

17. The basic premise of the article was that "dealing with individuals with autism and other developmental disabilities requires officers to have additional training to handle these situations."

18. Many states and cities have mandated training for their police officers concerning interacting with people who have autism.

19. On June 20, 2018, Jonathan Legg was autistic.

20. Consistent with his autism, Jonathan experienced difficulty with social interactions; difficulty with the give and take of conversations; difficulty with nonverbal conversation skills; and had hypersensitivities such as not liking to be touched by others.

**B.     Excessive Force was used by the Defendants on June 20, 2018.**

21.    Jonathan was on his way home from work when he was pulled over by Defendant Peter Shepetiak near the intersection of Stumph Road and East Huffman Road in Parma, Ohio.

22.    Defendant Shepetiak pulled Jonathan's car over because Shepetiak had entered Jonathan's license plate number into the Mobile Data Terminal in Shepetiak's police cruiser and discovered it was registered for use with a different vehicle.

23.    Defendant Shepetiak also pulled Jonathan's car over because Shepetiak thought Jonathan "had a fixed stare toward him and sunk down in the driver's seat while passing by."

24.    Defendant Shepetiak approached the front passenger's window of Jonathan's car to introduce himself and tell Jonathan the reason for the stop.

25.    Jonathan offered papers to Defendant Shepetiak, including E-check documents, and tried to explain why the plate on his car did not match.

26.    Defendant Shepetiak asked Jonathan to search the car and Jonathan agreed.

27.    Defendant Shepetiak moved to the driver's side of Jonathan's car and noticed that Defendant Berry was also present at the scene.

28.    On his own accord, Defendant Berry, a detective for the Parma Heights Police Department, had stopped unannounced in his unmarked police car behind Defendant Shepetiak's police vehicle.

29.    Defendant Berry was wearing a white shirt, red tie, black dress pants, and black dress shoes and was not in a police uniform.

30.    Per Defendant Shepetiak's request, Jonathan Legg exited his car via the front driver's side door.

31. A witness who was passing by the stopped vehicles, indicated she saw Defendant Shepetiak and Jonathan Legg moving toward the rear of Jonathan's car in a "still and calm" manner.

32. Defendant Berry moved from the passenger side of Jonathan's car to the driver's side of the car.

33. As Defendant Shepetiak and Jonathan were standing near the rear of Jonathan's car, Defendant Berry spotted a handgun in Jonathan's waistband and started yelling things like "Show your hands" and "don't reach for that."

34. Defendant Berry also shouted "Gun."

35. Defendant Shepetiak heard these shouts, panicked, and immediately grabbed Jonathan, tried to wrap him up, and thrown him to the ground in a hip toss.

36. During this action instigated by Defendants Berry and Shepetiak, Jonathan's gun discharged.

37. Defendant Shepetiak and Defendant Berry then started shooting at Jonathan Legg.

38. Jonathan Legg was shot multiple times by Defendants Shepetiak and Berry.

39. Jonathan Legg experienced severe pain and was conscious after the shooting for a period of time.

40. Jonathan Legg was eventually transported by ambulance to a hospital where he was pronounced dead as a result of gunshot wounds to his back, buttock, and extremities with skeletal and visceral injuries.

**C.     Policies, Practices, and Customs of the Defendants**

41. The policies, practices, customs and usages of Defendant City of Parma and Defendant City of Parma Heights regarding the interaction of officers with autistic persons and/or others

6

with mental health disorders were the moving force behind the use of force and proximately caused Jonathan Legg's suffering and death.

42. At all times relevant to the case, it was foreseeable that police officers from the City of Parma and the City of Parma Heights would, as part of their normal duties, encounter persons such as Jonathan Legg who were autistic.

43. Defendant City of Parma and Defendant City of Parma Heights failed to adequately train and supervise the officers to properly manage interactions with autistic citizens in order to minimize the use of force during such interactions.

44. By failing to adequately train and supervise officers to properly manage interactions with autistic citizens, the City of Parma and the City of Parma Heights acted with deliberate indifference to the health, safety, and rights of autistic citizens, including Jonathan Legg.  The failure to train and supervise officers to properly manage interactions with autistic citizens was a moving force behind the excessive force used on Jonathan Legg and proximately caused his suffering and death.

**D.    Harm to Plaintiff**

45. As a direct result of the tortious conduct of the Defendants, Jonathan Legg suffered physical injuries, pain and suffering, other economic and noneconomic damages, and eventually died as a result of the tortious conduct of the Defendants described herein.

46. As a further direct and proximate result of the tortious conduct of the Defendants and Jonathan Legg's resulting death, his surviving family members and next of kin suffered damages.

## V. FIRST CAUSE OF ACTION – 42 U.S.C. § 1983 CLAIMS

47. Plaintiff reavers and realleges each and every allegation contained in the proceeding paragraphs as if fully written herein.

48. Defendants have, under color of law, deprived Jonathan Legg of rights, privileges, and immunities secured to him by the Fourth and/or Fourteenth and/or other Amendments to the United States Constitution, including the prohibition on unreasonable searches and seizures and to be free of excessive force.

## VI. SECOND CAUSE OF ACTION – WRONGFUL DEATH

49. Plaintiff reavers and realleges each and every allegation contained in the proceeding paragraphs as if fully written herein.

50. Defendants' action caused the wrongful death of Jonathan Legg resulting in damages recoverable under R.C. § 2125.02.

## VII. THIRD CAUSE OF ACTION – AMERICANS WITH DISABILITIES ACT

51. Plaintiff reavers and realleges each and every allegation contained in the proceeding paragraphs as if fully written herein.

52. Defendants intentionally discriminated against Jonathan Legg or failed to provide him a reasonable accommodation when they used unnecessary and excessive force against him because of his disability, in violation of Title II of the Americans with Disabilities Act.

WHEREFORE, Plaintiff requests that this Court award the following:

- Compensatory damages in an amount be shown at trial;
- Punitive damages against Defendants Shepetiak and Berry in an amount to be shown at trial;
- Costs incurred in this action and reasonable attorney fees;
- Prejudgment interest; and

- Such other further relief as the Court may deem just and proper.

Respectfully Submitted,

/s/ R. Craig McLaughlin

_____
R. Craig McLaughlin  (0068765)
Elk & Elk Co., Ltd.
6105 Parkland Blvd., Suite 200
Mayfield Heights, OH  44124
Phone:  (440) 442-6677
Fax:  (440) 442-7944
Email:  rmclaughlin@elkandelk.com
*Attorney for Plaintiff*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues for which a jury trial is appropriate.

/s/ R. Craig McLaughlin

_____
R. Craig McLaughlin  (0068765)