IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KATHLEEN HOGAN, as Administrator of the Estate of Jonathan H. Legg, deceased, | ) CASE NO.: 1:20-CV-1331 ) ) |
| Plaintiff, | ) JUDGE DONALD C. NUGENT ) |
| v. | ) ) |
| CITY OF PARMA, OHIO, *et al.*, | ) **MEMORANDUM OPINION** ) **AND ORDER** |
| Defendants. | ) |

This matter is before the Court on Defendants, City of Parma Heights, Ohio ("Defendant Parma Heights") and Officer Luke Berry's ("Defendant Berry") (collectively, the "Parma Heights Defendants") Motion for Judgment on the Pleadings (ECF #12) and Defendants, Officer Peter Shepetiak ("Defendant Shepetiak") and City of Parma's ("Defendant Parma") (collectively, the "Parma Defendants") Motion for Judgment on the Pleadings (ECF #20). For the reasons that follow, Defendants' Motions are granted in part and denied in part.

I. FACTUAL BACKGROUND[1]

In her Complaint, Plaintiff Kathleen Hogan ("Ms. Hogan" or "Plaintiff") asserts three causes of action against all Defendants: (1) unreasonable searches and seizures and excessive force under the Fourth and/or Fourteenth Amendments, pursuant to 42 U.S.C. § 1983 (Count One); (2) wrongful death under O.R.C. § 2125.02 (Count Two); and, (3) violation of Title II of

---

[1] The facts as stated in this Memorandum and Order are taken from the Complaint and should not be construed as findings of this Court. The Court notes that Defendants' Motions raises a question of fact outside Plaintiff's Complaint. For purposes of these briefings and pursuant to Fed.R.Civ.P. 12(b)(6) and 12(c), the Court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw reasonable inferences in favor of the plaintiff. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

1

the Americans with Disabilities Act (the "ADA") (Count Three). (Complaint, ECF #1 at ¶¶ 47-52).

Plaintiff's claims are based upon an incident that occurred on June 20, 2018, when Decedent, Jonathan H. Legg ("Decedent"), a 29-year-old-man with Asperger's syndrome, was pulled over by Parma police officer, Defendant Shepetiak. (*Id.* at ¶ 21). Plaintiff's Complaint summarizes the alleged events of the evening as follows:

> Defendant Shepetiak pulled Jonathan's car over because Shepetiak had entered Jonathan's license plate number into the Mobile Data Terminal in Shepetiak's police cruiser and discovered it was registered for use with a different vehicle. (*Id.* at ¶ 21). Defendant Shepetiak also pulled Jonathan's car over because Shepetiak though Jonathan "had a fixed stare toward him and sunk down in the driver's seat while passing by." (*Id.* at ¶ 23). Defendant Shepetiak approached the front passenger's window of Jonathan's car to introduce himself and tell Jonathan the reason for the stop. (*Id.* at ¶ 24). Jonathan offered papers to Defendant Shepetiak, including E-check documents, and tried to explain why the plate on his car did not match. (*Id.* at ¶ 25).
> Defendant Shepetiak asked Jonathan to search the car and Jonathan agreed. (*Id.* at ¶ 26). Defendant Shepetiak moved to the driver's side of Jonathan's car and noticed that Defendant Berry was also present at the scene. (*Id.* at ¶ 27). On his own accord, Defendant Berry, a detective for the Parma Heights Police Department, had stopped unannounced in his unmarked police car behind Defendant Shepetiak's police vehicle. (*Id.* at ¶ 28). Defendant Berry was wearing a white shirt, red tie, black dress pants, and black dress shoes and was not in a police uniform. (*Id.* at ¶ 29).
> Per Defendant Shepetiak's request, Jonathan Legg exited his car via the front driver's side door. (*Id.* at ¶ 30). A witness who was passing by the stopped vehicles, indicated she saw Defendant Shepetiak and Jonathan Legg moving toward the rear of Jonathan's car in a "still and calm" manner. (*Id.* at ¶ 31). Defendant Berry moved from the passenger side of Jonathan's car to the driver's side of the car. (*Id.* at ¶ 32). As Defendant Shepetiak and Jonathan were standing near the rear of Jonathan's car, Defendant Berry spotted a handgun in Jonathan's waistband and started yelling things like "Show your hands" and "don't reach for that." Defendant Berry also shouted "Gun." (*Id.* at ¶¶ 33-34).
> Defendant Shepetiak heard these shouts, panicked, and immediately grabbed Jonathan, tried to wrap him up, and thrown [sic] him to the ground in a hip toss. During this action instigated by Defendants Berry and Shepetiak, Jonathan's gun discharged. (*Id.* at ¶¶ 35-36). Defendant Shepetiak and Defendant Berry then started shooting at Jonathan Legg. Jonathan Legg was

2

shot multiple times by Defendants and experienced severe pain and was conscious after the shooting for a period of time. (*Id.* at ¶¶ 37-38). Jonathan Legg was eventually transported by ambulance to a hospital where he was pronounced dead as a result of gunshot wounds to his back, buttock, and extremities with skeletal and visceral injuries. (*Id.* at ¶ 40).

With respect to Decedent's alleged disability, Ms. Hogan asserts that Defendants Shepetiak and Berry "incorrectly perceived Jonathan's autistic difficulties, behavior, and mannerisms as suspicious behavior and consequently escalated this routine traffic stop to a situation where the officers panicked, overreacted, used excessive force, violated Jonathan's rights, and shot and killed him." (*Id.* at ¶ 5). She also argues that Defendants should be held liable because "policies, practices, customs and usages of Defendant City of Parma and Defendant City of Parma Heights regarding the interaction of officers with autistic persons and/or others with mental disorders were the moving force behind the use of force and proximately caused Jonathan Legg's suffering and death." (*Id.* at ¶ 41). Plaintiff further summarizes her allegations as follows:

> Defendant City of Parma and Defendant City of Parma Heights failed to adequately train and supervise the officers to properly manage interactions with autistic citizens in order to minimize the use of force during such interactions. By failing to adequately train and supervise officers to properly manage interactions with autistic citizens, the City of Parma and the City of Parma Heights acted with deliberate indifference to the health, safety and rights of autistic citizens, including Jonathan Legg. The failure to train and supervise officers to properly manage interactions with autistic citizens was a moving force behind the excessive force used on Jonathan Legg and proximately caused his suffering and death. (*Id.* at ¶¶ 43-44).

In their respective Motions for Judgment on the Pleadings (ECF #12 and #20), Defendants Parma Heights and Parma both argue that Plaintiff fails to assert any cognizable cause of action and therefore dismissal of her Complaint is appropriate. Plaintiff has opposed both Motions (ECF #18 and #22) and Defendants have filed replies. (ECF #19 and #23). The Motions are now fully briefed and ready for decision.

## II. STANDARD OF REVIEW

The standard of review used by a district court to rule on a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is the same as the standard used to rule on Rule 12(b)(6) motions. *See Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998). A motion to dismiss under Fed. R. Civ. P. 12(b)(6) allows a defendant to test the legal sufficiency of a complaint without being subject to discovery. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003). In evaluating a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw reasonable inferences in favor of the plaintiff. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The court will not, however, accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000).

In order to survive a motion to dismiss, a complaint must provide the grounds of the entitlement to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-556, 127 S. Ct. 1955, 1964-65 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted); *see Association of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 2007 WL 2768285 at *2 (6th Cir. 2007) (recognizing that the Supreme Court "disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)"). Accordingly, the claims set forth in a complaint must be plausible, rather than conceivable. *See Twombly*, 127 S. Ct. at 1974.

On a motion brought under Rule 12(b)(6), the court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record the case

and exhibits attached to the complaint may also be taken into account. *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

### III. DISCUSSION

#### a. Plaintiff's Claims Under 42 U.S.C. § 1983 and Qualified Immunity

##### i. Defendants Berry and Shepetiak

Section 1983 is not itself a source of substantive rights but provides "a method for vindicating federal rights elsewhere conferred." *Graham v. Connor,* 490 U.S. 386, 393-94, 109 S. Ct. 104 L. Ed. 2d 443. Thus, to establish a claim under § 1983, a plaintiff must "identify a right secured by the United States Constitution and deprivation of that right by a person acting under color of state law." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992). Here, Plaintiff alleges that "Defendants, under color of state law, deprived Decedent of rights, privileges and amenities secured by the United States Constitution by the Fourth or Fourteenth Amendments, including the prohibition on unreasonable searches and seizures and to be free of excessive force." (ECF #1 at ¶ 48).

While § 1983 permits recovery against public officials who violated an individual's civil rights, these officials are often entitled to qualified immunity from individual liability for damages. *See Jones v. City of Cincinnati*, 2006 U.S. Dist. LEXIS 75430, at *17. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Here, Defendants invoke this

5

protection, arguing their conduct on June 20, 2018 is shielded by qualified immunity and so they are immune from Plaintiff's suit.

"The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, at 231 (2009) (internal citations omitted). "Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015), *citing Pearson v. Callahan*, 555 U.S. 223, 242, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). The application of qualified immunity is determined as a matter of law, not as a matter of fact. *Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir. 1988).

Qualified immunity under federal law is applied using a two-part test. First, courts must determine whether the alleged acts violate a constitutional right. Second, the court must determine whether at the time of the actions, the constitutional right is "clearly established." *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). A right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).

The relevant inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The determination must be based on what a reasonable officer would believe or understand under the circumstances given what was known to the officer at the time. *White v. Pauly*, 137 S.Ct. 548, 550, 196 L. Ed. 2d 463 (2017); *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466, 2474,

6

192 L. Ed. 2d 416 (2015); *Fox v. DeSoto*, 489 F.3d 227 at 236 (6th Cir. 2007). The standard is objective, and must not be applied using hindsight unavailable to the officers at the time the actions were taken. *Id*. Once a defendant has shown that he was acting within his discretionary authority, the plaintiff bears the burden of proving that he is not entitled to qualified immunity. *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

The Sixth Circuit has recognized that while "insubstantial claims against government officials should be resolved as early in the litigation as possible, it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (internal citations omitted). Indeed, the Sixth Circuit has held that although "an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Wesley v. Campbell*, 779 F.3d 421, 433-434 (6th Cir. 2015) (internal citations omitted).

As set forth above, Plaintiff alleges Defendants deprived Decedent of his rights, privileges and immunities under the Fourth and Fourteenth Amendments when they used unreasonable and excessive force against Decedent and directly and proximately caused his injuries and death. In response, Defendants argue their conduct was reasonable under the circumstances and that there is no language in the Fourth or Fourteenth Amendment that bars police officers from protecting themselves. *City and Cnty. Of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1775 (2015).

The Supreme Court has interpreted the Fourth Amendment, which guarantees citizens the right "to be secure in their persons…against unreasonable seizures," as providing the right to be free from excessive force. *Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865, 104 L.Ed. 2d 443

7

(1989). Courts must therefore analyze claims that law enforcement officers have used excessive force in the course of an arrest using the Fourth Amendment's "reasonableness" standard. *Id.* at 395. The reasonableness test is not capable of mechanical application but requires careful application of the facts of the case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. In other words, a court must "ask whether the officer's action, in light of the totality of the circumstances, were objectively reasonable." *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 20010) (reversing the district court's ruling that granted defendants' motion to dismiss, finding that the complaint stated a legally sufficient claim of excessive force and the officers were not entitled to qualified immunity).

Because the amount of force that is reasonable in a seizure depends on a variety of circumstances, and because those circumstances may change throughout the course of a seizure, the Sixth Circuit analyzes excessive force claims in segments. *See, e.g., Dickerson v. McClellan*, 101 F.Ed 1151, 1161 (6th Cir. 1996). Here, Defendants' argue their conduct during the June 20, 2018 traffic stop was justifiable self-defense based on their allegation that Decedent retrieved his gun from his waistband, pointed it at Detective Berry and began shooting, facts not contained in Plaintiff's Complaint. Defendants contend they perceived a legitimate threat to their safety and thus their conduct was reasonable under the circumstances.

While Defendants' argument may contradict Plaintiff's claim, the Court cannot find at this stage that they have met their burden of demonstrating that Plaintiff can prove no set of facts in support of her claim that the officers violated Decedent's constitutional rights. When the allegations as alleged by Plaintiff in the Complaint are taken to be true, there remains a question

of fact as to whether Defendants' actions constituted excessive force in violation of the U.S. Constitution. Based on her Complaint, the Court concludes Plaintiff sufficiently pleads facts to support a § 1983 claim against Defendants Berry and Shepetiak and that her allegations may be better assessed by the Court following discovery.

### b. Defendants Parma Heights and Parma

Plaintiff alleges Defendants Parma Heights and Parma should also be held liable under 42 U.S.C. § 1983. As a rule, local governments may not be sued under § 1983 for an injury inflicted solely by employees or agents under a theory of *respondeat superior*. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). "Instead, it is when the execution of a government's policy or custom…inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694; *DePiero v. City of Macedonia*, 180 F.3d 770, 786 (6th Cir. 1999); *see also Graham v. County of Washtenaw*, 358 F.3d 377, 382 (6th Cir. 2004) (to prove municipal liability the city must be responsible for a constitutional violation). Moreover, the policy or custom must be the moving force of the constitutional violation in order to establish municipal liability. *Monell*, 436 U.S. at 690.

Liability against a municipality is available under multiple theories. *See id.* at 660-61 (an express municipal policy); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988) (a "widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage' with the force of law"); *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989) (a failure to act where the "inadequacy [of the existing practice is] so likely to result in the violation of constitutional rights, that the policymaker…can reasonably be said to have been deliberately indifferent to the [plaintiff's rights]"); *Leach v. Shelby County Sheriff,*

891 F.2d 1241, 1247 (6th Cir. 1989) (a ratification of a municipal employee's unconstitutional acts by failing to meaningfully investigate and punish allegations of unconstitutional conduct).

When an action is brought under 42 U.S.C. § 1983 against a municipality, plaintiff must show that, due to its deliberate conduct, the municipality was the "moving force" behind the injury alleged. *Wright v. City of Euclid, Ohio*, 962 F.3d 852, 879 (6th Cir. 2020) citing *Allman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013). This requires plaintiff to demonstrate that "the municipality had a 'policy or custom' that caused the violation of his rights." *Id*. at 880 quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L.Ed. 2d 611. To state a cause of action, a plaintiff must demonstrate "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violation." *Id*.; *see Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019). To properly plead a claim premised on inadequate training, the Supreme Court has held that "inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L.Ed.2d 412 (1989).

Here, Plaintiff alleges that Defendants Parma Heights and Parma's "policies, practices, customs and usages" regarding the interaction of officers with autistic persons and/or others with mental health disorders were the moving force behind the use of excessive force and ultimate death of Decedent. (ECF #1 at ¶¶ 41, 44). Plaintiff further alleges that its failure to train its officers resulted in deliberate indifference to the health, safety and rights of autistic citizens, including Jonathan Legg. (ECF #1 at 44). Defendants argue Plaintiff's claim fails as a matter of

law because she does not sufficiently allege a policy or practice that resulted in a violation of Decedent's constitutional rights. On a motion brought under Fed. R. Civ. P. 12(c), the Court's role is to determine whether Plaintiff's Complaint sufficiently alleges a plausible cause of action. Taking the allegations in her Complaint as true, Plaintiff sufficiently pleads a cause of action. Therefore, dismissal at this stage in the litigation is not appropriate.

### c. Wrongful Death Under O.R.C. § 2125.02

In Count Two of her Complaint, Plaintiff alleges Defendants are liable for Decedent's death under Ohio Revised Code § 2125.02, which provides a statutory right of action for wrongful death to be brought in the name of the personal representative of a decedent. A wrongful death action in Ohio has three elements: "(1) the existence of a duty owing to the plaintiff's decedent, (2) a breach of that duty, and (3) proximate causation between the breach of the duty and the death." *Thompson v. Wing*, 70 Ohio St. 3d 176, 184, 1994 Ohio 358, 637 N.E.2d 917 (Ohio 1994); *see also* Ohio Rev. Code Ann. § 2125.01. Wrongful death claims serve to compensate a decedent's beneficiaries for the injuries they suffered as a result of the wrongful death. *Peters v. Columbus Steel Castings Co.*, 115 Ohio St. 3d 134, 137, 2007 Ohio 4787, 873 N.E.2d 1258 (Ohio 2007).

Defendants argue they are entitled to judgment on Plaintiff's wrongful death claim pursuant to Ohio's statutory immunity statute, O.R.C. § 2744.03, which provides limited immunity to political subdivisions and their employees so long as the employees did not act "with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 2744.03. With respect to Defendants Berry and Shepetiak, O.R.C. § 2744.03 provides that individual political subdivision employees can be liable for: "(1) acts or omissions [] manifestly outside the scope of the employees' responsibilities; (2) acts or omissions [done] with malicious

11

purpose, in bad faith, or in a wanton or reckless manner," and (3) where civil liability is expressly imposed by the Revised Code. O.R.C. § 2744.03(A)(6).

Plaintiff alleges Defendants Berry and Shepetiak's actions were objectively unreasonable when they shot Decedent several times without affording him with adequate time to respond to Defendant Berry's commands and, these actions proximately caused his injuries and death. Plaintiff also alleges that Defendants Parma Heights and Parma should be found liable for objectively unreasonable, wanton and/or reckless conduct. Ms. Hogan asserts that Decedent's wrongful death has resulted in recoverable damages for his surviving family members and next of kin, pursuant to O.R.C. § 2125.02. The Court finds, when taking Plaintiff's allegations as true, the Complaint sufficiently pleads facts that create a plausible claim for relief against Defendants.

### d. Americans with Disabilities Act

Finally, in Count Three of her Complaint, Plaintiff alleges Defendants' conduct on June 20, 2018 violated Title II of the Americans with Disabilities Act (ECF #1 at ¶ 52). Specifically, Plaintiff alleges Defendants were not adequately trained to interact with autistic citizens and that Defendants "intentionally discriminated against Jonathan Legg or failed to provide him with a reasonable accommodation when they used unnecessary and excessive force against him because of his disability…" (*Id.*).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To demonstrate a *prima facie* case under Title II of the ADA, a plaintiff must establish that "(1) he has a disability; (2) he is otherwise qualified; and (3) he is being excluded from participation in, being denied the benefits of, or being subjected to

discrimination under the program solely because of [his] disability." *Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003).

There is limited case law in the Sixth Circuit addressing whether or how Title II of the ADA might apply while effectuating an arrest or investigation. Where courts have determined that the ADA does apply, they have developed two main theories of potential liability: a "wrongful arrest" theory and a "reasonable accommodation" theory. *Scozzari v. City of Clare*, 2009 U.S. Dist. LEXIS 139762. A "wrongful arrest" claim generally arises when police officers have "wrongfully arrested someone with a disability because they misperceived the effects of that disability as criminal activity." *Gohler v. Enright*, 186 F.3d 1216, 1220 (10th Cir. 1999). *See, e.g., Jackson v. Inhabitants of Town of Sanford,* No. 94-12-P-H, 1994 U.S. Dist. LEXIS 15367, 1994 WL 589617 (D. Me. Sept. 23, 2994). A "reasonable accommodation" claim arises when police officers do not reasonably accommodate a plaintiff's disability during the course of an investigation or an arrest. *See, e.g., McCray v. City of Dothan*, 169 F. Supp. 2d 1260 (M.D. Ala. 2001), aff'd in part, rev'd in part on other grounds, 67 Fed. Appx. 582, 2003 WL 23518420 (11th Cir. 2003).

The Sixth Circuit has discussed Title II's broad scope, noting that the phrase "services, programs or activities" encompasses virtually everything that a public entity does." *Johnson v. City of Saline*, 151 F.3d 564. 569 (6th Cir. 1998). However, the Sixth Circuit has also noted that claims under Title II of the ADA do require a showing of intentional discrimination. *See Dillery v. City of Sandusky*, 398 F.3d 562 (6th Cir. 2005), *see also. Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008) (where the court noted "the plaintiff must show that the discrimination was intentionally directed toward him or her in particular."). Here, Plaintiff does not allege that Decedent was intentionally discriminated against solely because of his alleged disability. Even

13

construing the Complaint in the light most favorable to the Plaintiff, there are insufficient allegations to set forth a plausible claim against Defendants under the ADA.

### IV. CONCLUSION

For the reasons set forth above, Defendants City of Parma Heights, Ohio and Luke Berry's Motion for Judgement on the Pleadings (ECF #12) and Defendants Officer Shepetiak and City of Parma's Motion for Judgment on the Pleadings (ECF #20) are granted in part and denied in part. Count Three of Plaintiff's Complaint is dismissed. Counts One and Two remain.

IT IS SO ORDERED.

_____
DONALD C. NUGENT
Senior United States District Judge

DATED: _December 18, 2020_